IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JULIE ANDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:15-cv-01977-JHE |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION[1]

Plaintiff Julie Anders ("Anders") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB"), and supplemental security income ("SSI").[2] (Doc. 1). Anders timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Anders protectively filed applications for a period of disability, DIB, and SSI in July and August 2012, initially alleging she became unable to work beginning December 31, 2010. (Tr. 415-23). At her hearing, she amended her claim to allege disability beginning January 1, 2012.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 15).

[2] The judicial review provisions for DIB claims, 42 U.S.C. § 405(g), apply to claims for SSI. *See* 42 U.S.C. § 1383(c)(3).

1

(Tr. 303). Anders was a forty-year-old female on her hearing date with a high school education. (Tr. 300, 417, 462). Anders's past relevant work was as a secretary or administrative assistant, office manager, nurse's assistant, and loan officer. (Tr. 313-14). The Agency initially denied Anders's application and Anders requested a hearing, where she appeared on March 11, 2014. (Tr. 300-18). After the hearing, the Administrative Law Judge ("ALJ") denied Anders's claim on March 26, 2014. (Tr. 278-98). Anders sought review by the Appeals Council, but it denied her request on September 22, 2015. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On November 2, 2015, Anders initiated this action. (*See* doc. 1).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the

---

[3] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;
(2)  whether the claimant has a severe impairment;
(3)  whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)  whether the claimant can perform his or her past work; and
(5)  whether the claimant is capable of performing any work in the national economy.

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Anders last met the insured status requirements of the Social Security Act on December 31, 2015 (her date last insured or "DLI") and Anders had not engaged in substantial gainful activity after her original alleged onset date of December 31, 2010.[5] (Tr. 283-84). At Step Two, the ALJ found Anders has the following severe impairment: fibromyalgia (20 C.F.R. § 404.1520(c) and 416.920(c)). (Tr. 284). At Step Three, the ALJ found Anders did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 286).

---

[5] As Anders notes, the ALJ made this determination based not on the amended onset date of January 1, 2012, but on the original onset date. (Doc. 11 at 5). However, the ALJ's conclusion Anders had not engaged in substantial gainful activity since December 31, 2010, necessarily means Anders had not engaged in substantial gainful activity since January 1, 2012. To the extent this mistaken date is relevant in assessing Anders's claims, it is discussed below.

Before proceeding to Step Four, the ALJ determined Anders's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that, through her DLI, Anders had the RFC

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). She can lift and/or carry up to five pounds frequently and ten pounds occasionally. She cannot climb ladders, ropes, or scaffolds. She can perform frequent postural activities. She can occasionally push or pull. She can frequently reach. She should avoid concentrated exposure to extreme cold temperatures and vibration. She cannot work around dangerous moving machinery, work at unprotected heights, or do any commercial driving. She needs the option to alternate sitting and standing for one to two minutes every hour or so. She can be expected to miss one day a month of work.

(Tr. 286).

At Step Four, the ALJ determined that, through the date last insured, Anders is able to perform her past relevant work as an administrative assistant and loan officer, as the work required by these jobs was not precluded by Anders's RFC. (Tr. 293). Therefore, the ALJ determined Anders has not been under a disability and denied her claim. (*Id.*).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or if improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Anders presents two arguments. First, she contends the ALJ improperly applied the Eleventh Circuit pain standard. (Doc. 11 at 4). Second, she says the ALJ failed to articulate good

cause for according less weight to the opinions of Anders's treating physician, Dr. Stidham. (*Id.* at 12).

   A. **The ALJ properly evaluated the credibility of Anders's complaints of pain, consistent with the Eleventh Circuit's pain standard.**

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990). When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.[6] The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 Fed. App'x. 287, 288 (11th Cir. 2009). "[I]f a credibility determination

---

[6] SSR 96-7p has since been superseded by SSR 16-3p, 2016 WL 1119029, which was published in the Federal Register on March 16, 2016, and became effective March 28, 2016, *see* 2016 WL 1237954. The ALJ in this case issued his ruling on March 26, 2014, well before the publication or effective date of that ruling.

is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

Here, the ALJ found that Anders met the first part of the Eleventh Circuit's pain standard— evidence of an underlying medical condition. (Tr. 287). However, the ALJ concluded Anders did not meet either part of the second prong of the pain standard, as "the objective evidence does not confirm either the severity of the claimant's alleged symptoms arising from her medically documented conditions, or that those conditions could reasonably be expected to give rise to the symptoms alleged by the claimant." (Tr. 287). To support this conclusion, the ALJ specifically found Anders's own subjective testimony as to the intensity, persistence, and limiting effects of her pain to be not entirely credible for a number of reasons. (Tr. 292). Anders argues in making this determination, the ALJ did not properly assess her credibility.

Anders's complaints consist, generally, of debilitating pain. At the hearing, Anders testified she had pain in her neck and shoulders that made holding her arms in front of her difficult. (Tr. 308). On a scale of 1 to 10, she rated her pain as a 6-7 before taking medication. (Tr. 310). On good days, her pain medication cut her pain in half, but she had bad days where the medication has no effect three to four days per week. (*Id.*). Epidural treatments, heat, massage therapy, Pilates-style stretching, and use of a TENS unit all helped with her pain. (Tr. 311). Anders testified that most days she had to lie down to relieve her pain, for a total of approximately two hours each day. (*Id.*). She testified that she could sit for ten to fifteen minutes before she needs to change position, and she could stand for ten to twenty minutes if she "can fidget a little bit." (*Id.*). She

stated she could lift and carry no more than five pounds, and she can walk for ten to fifteen minutes before needing a rest. (Tr. 312). She underwent a disc fusion in her neck to stabilize her spine, which helped with weakness in her arms but did not completely eradicate the pain. (Tr. 308).

Anders argues the ALJ's conclusion her pain is not disabling was contrary to the objective medical evidence, which she asserts demonstrates a longitudinal history of chronic pain and pain management. However, the ALJ thoroughly reviewed Anders's medical history. (Tr. 287-291). He found Anders's relatively good surgical outcomes, responses to pain medication and treatment, and noncompliance with physical therapy indicated that her pain did not rise to the level of disabling. Anders attacks this assessment first by asserting her treating physicians showed no disbelief in her severe pain and provided treatments for pain relief, which she states means the ALJ erred in concluding treatment was effective. (Tr. 6, 11). However, Anders's reading of her treatment notes is selective and, notably, both Anders and the Commissioner cite many of the same records for vastly different propositions, with the Commissioner highlighting the efficacy of treatments and Anders emphasizing the initial complaints of pain. (*Compare* doc. 11 at 11 *with* doc. 13 at 8). Anders's treatment notes consistently describe her pain as better with medications, heat, rest, and TENS, which comports with her testimony at the hearing. (Tr. 771, 776, 781, 822, 823, 863, 869, & 880). Although it is certainly possible to reach a different conclusion as to the degree to which treatment helped Anders, the undersigned may not reverse on that basis. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (if supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings). The ALJ's conclusion Anders's treatment was effective in mitigating her pain was supported by substantial evidence.

Next, Anders objects to the ALJ's determination her lack of compliance with physical therapy undermines her credibility. (Doc. 11 at 11). A claimant is obligated to follow treatment prescribed by a physician if it can restore the claimant's ability to work. 20 C.F.R. §§ 404.1530(a), 416.930(a). Anders testified she had attended every scheduled visit with Encore Rehabilitation of Cullman, where she was directed for pain therapy after her spinal fusion, until Encore "bruised [her] really bad," which led to her cancelling the therapy; in any event, she "felt worse and not better" after going to therapy due to pain. (Tr. 304-05). However, the records from Encore indicate Anders attended therapy "sporadically . . . [g]enerally once a week," and had not been "compliant with regular visits and treatment approach." (Tr. 640). Although Anders offered an alternative explanation for not pursuing physical therapy, the ALJ was not required to credit it, especially when Anders's statement she had missed no appointments contradicted the medical records and Anders purported explanation is wholly different in character from the types of "good reason" that excuse noncompliance with treatment. *See* 20 C.F.R. §§ 404.1530, 416.930 (listing, as nonexclusive types of "good reason" for not following prescribed medical treatment: "(1) The specific medical treatment is contrary to the established teaching and tenets of your religion; (2) The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment; (3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment; (4) The treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or (5) The treatment involves amputation of an extremity, or a major part of an extremity.").

Finally, Anders argues the ALJ improperly considered that she had applied for and received unemployment benefits through the end of 2011 in assessing the credibility of her pain testimony.

(*See* tr. 283-84). Anders originally alleged an onset date of disability of December 31, 2010; however, as stated above, she amended the alleged onset date at her hearing to January 1, 2012. (Tr. 303). Alabama law specifically precludes eligibility for unemployment benefits where the claimant is unemployed due to sickness or disability; in fact, to be eligible the claimant must be "physically and mentally able to perform work of a character which he is qualified to perform by past experience or training, and he is available for such work." Ala. Code §§ 25-4-77 & 25-4-78. Although she ultimately amended her disability claim to an onset date of January 2012, Anders nevertheless was originally seeking disability benefits for the same time period that she also received unemployment benefits (which required continuing affirmations under oath that she was willing and able to perform work). The ALJ noted that, "[w]hile the receipt of unemployment compensation does not, in and of itself, contradict a finding of 'disability,' it represents a continuing assertion of the ability to work, and raises serious credibility issues." (Tr. 283). Given the ALJ's finding that the record did not indicate any worsening of Anders's condition between the end of 2011 (when she stopped collecting unemployment benefits and thus stopped certifying she was able to work) and January 1, 2012 (her alleged onset date), the undersigned finds no reversible error in the ALJ's consideration of this factor, nor that the ALJ concluded it cuts against Anders's credibility

      The thrust of Anders's argument is directed to how much evidence supports her pain rather than whether substantial evidence supports the ALJ's conclusion. However, the district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The undersigned concludes it is.

Though other evidence might support a different conclusion, this Court may not reverse on that basis.

### B. The ALJ properly considered the opinions of Anders's treating physician.

Anders also argues that the ALJ failed to properly articulate good cause for according less weight to the opinion of Anders's treating physician, Dr. Jeremy Stidham. An ALJ must accord the opinions of a treating physician "substantial or considerable weight unless good cause is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir.2004). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir.2004). Additionally, statements from acceptable medical sources, including primary care physicians, regarding what a claimant can still do physically and/or mentally are relevant but not determinative evidence; the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. §§ 404.1527, 404.1545, 404.1546(c); SSR 96-5p ("However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.").

On December 4, 2013, Dr. Stidham filled out a residual functional capacity form at Anders's request. (Tr. 787-88, 806-11). He noted, however, that he was "not willing to do anything else for this." (Tr. 788). His RFC form noted he had diagnosed Anders with fibromyalgia, degenerative disc disease, bulging disc, and spinal stenosis. (Tr. 806-11). Her treatment had included oral pain medication, epidurals, and a TENS unit. (*Id.*). He opined that

Anders could not sit or stand for six to eight hours; she could stand for thirty minutes and sit for fifteen minutes, limited by back and neck pain; she could walk a quarter of a mile without stopping; she could lift and/or carry five to ten pounds regularly; her pain was constant; she had difficulty lifting, pulling, holding objects, bending, squatting, kneeling, and turning; and she could not take pain medications if she was going to drive. (*Id.*). Dr. Stidham concluded Anders could no longer work at her previous employment due to chronic pain. (Tr. 809).

Anders argues the Commissioner's determination must be reversed because the ALJ did not explicitly state the weight given to Dr. Stidham's opinion. An "ALJ must state with particularity the weight given to different medical opinions and the reasons therefore . . . [because i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1176 (11th Cir. 2011) (internal quotes and citations omitted). However, in this case, the ALJ cited the relevant standard: "the opinion of a treating physician is entitled to controlling weight in assessing a claimant's residual functional capacity." (Tr. 291). The ALJ also applied the caveat that this is "contingent upon its being supported by the evidence in the record." (*Id.*). The ALJ also noted "[c]onsideration will be given to the opinion of a treating physician as to the existence and severity of impairments, and significant weight will be given as to resulting limitations, but the application of vocational factors does not fall within the purview of treating or examining physicians." (*Id.*). This is sufficient for the undersigned to review the ALJ's conclusion, determine she assigned less than controlling weight, and consider whether the ALJ offered good cause for failing to assign controlling weight. *See Heppell-Libsansky v. Comm'r of Soc. Sec.,* 170 F. App'x 693, 698 n.4 (11th Cir. 2006) (no

reversible error for failing to explicitly assign weight to treating physicians' opinion when weight assigned was clear from the record).

Here, the ALJ articulated good cause for failing to assign controlling weight to Dr. Stidham's opinion: its inconsistency with the record evidence. (Tr. 291). The ALJ noted the majority of Anders's treatment had been for pain rather than any other condition (with the exception of her spinal fusion surgery), and Anders appeared to have had only moderate pain (with occasionally moderately severe pain) as long as she followed her treatment. (Tr. 292). The ALJ also observed the limitations imposed by Dr. Stidham were not consistent with physical examinations performed by Dr. Stidham and another physician, Dr. Ann Still, (tr. 292), which found, generally, normal to mildly reduced range of motion, normal gait, and normal muscle tone. (*See* tr. 287-290, 788, 815-16, 825, 835, 839, 872, 883). Because of the inconsistency between Dr. Stidham's opinion and both the record evidence and Dr. Stidham's own treatment notes, the ALJ had good cause to give his opinion less than controlling weight. Additionally, to the extent Dr. Stidham offered a conclusion on Anders's RFC or ability to return to work, the ALJ was not required to give Dr. Stidham's nonmedical conclusion any particular significance at all; a physician is not entitled to make the dispositive determinations reserved for the Commissioner.

## VII. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Anders's claim for a period of disability and DIB is **AFFIRMED**, and this action is **DISMISSED WITH PREJUDICE**. A separate order will be entered.

DONE this 30th day of March, 2017.

                                                            **JOHN H. ENGLAND, III**
                                                            UNITED STATES MAGISTRATE JUDGE